UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **CALVIN RODRIGUE** <br> **LA. DOC #248547** | \* | **CIVIL ACTION NO. 09-0985** <br><br> **SECTION P** |
| **VERSUS** | \* | **JUDGE ROBERT G. JAMES** |
| **MOREHOUSE DETENTION** <br> **CENTER, ET AL.** | \* | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the court is a motion for summary judgment filed by defendants Mike Tubbs, Sheriff of Morehouse Parish; Warden Robert Tapp; Assistant Warden Issaic Brown; Nurse S. Grayson; Lieutenant Brad Fife; and Sergeant Clacks (hereinafter "defendants") [doc. # 30]. The motion has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons stated below, it is recommended that the motion be **GRANTED**.

### Background

*Pro se* plaintiff Calvin Rodrigue, proceeding *in forma pauperis* [doc. # 3], filed the instant civil rights complaint on June 15, 2009. [Doc. # 1.] Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections; he is incarcerated at the Winn Correctional Center, Winnfield, Louisiana. However, plaintiff complains that he was denied prompt and appropriate medical care while he was incarcerated at the Morehouse Detention Center ("MDC"), Collinston, Louisiana. Plaintiff sued MDC, Warden Robert Tappin, Assistant Warden Issaic Brown, Nurse Grayson, Lieutenant Fife, Sergeant Clacks, an unnamed insurance

company, an unnamed physician, and the Sheriff of Morehouse Parish seeking compensatory and punitive damages and an order directing the federal government to "investigate."

The exact date range plaintiff was confined at MDC is unclear; in his Opposition to the underlying Motion, plaintiff concedes that "the dates set forth herein will not coincide with the dates previously set forth in [the Complaint]." (Opp. Mot. Dismiss [doc. # 36], ¶ 11.) What is clear, upon review of the exhibits submitted with the underlying Motion, including the plaintiff's medical records from MDC, is as follows.

On March 2, 2008, plaintiff put in a Sick Call Request ("SCR"), complaining of chest pain, heart burn, and a rash on his legs. (Def.'s Mot. Summ. J. Exs. [doc. # 30]). Plaintiff was given Zantac and a cream for the rash. (*Id.*) Plaintiff refused his "AM-support" medication on March 7, 8, and 9, 2008. (*Id.*) On March 17, 2008, plaintiff put in another SCR, complaining that the Zantac did not "agree" with him; plaintiff was prescribed Aciphex. (*Id.*) Plaintiff placed another SCR on March 25, 2008, complaining of discomfort while urinating, and that he had a rash on his penis and legs. (*Id.*) Plaintiff also stated that he had been coughing up blood, and requested an STD and HIV test. (*Id.*) Nurse Grayson noted that plaintiff was thirsty "all the time" and had a family history of diabetes. (*Id.*) As such, Nurse Grayson placed plaintiff on the "ADA 2,000 calorie a day diet" in order to combat plaintiff's ailments. (*Id.*) On April 18, 2008, plaintiff refused the diet and signed a "Refusal to Accept Medical Care" form stating same. (*Id.*)

On April 21, 2008, plaintiff placed an SCR, complaining that the food tray he was eating did not "agree" with him, causing him "headache and stomach discomfort and dizziness." (*Id.*) Over a month later, on May 31, 2008, plaintiff placed a "Declaration of Emergency Treatment," declaring himself an emergency due to "stomach ache, chill bumps, hot/cold diabetic related."

(*Id.*) Nurse Grayson provided the plaintiff with Phenergan for his nausea. (*Id.*) The next day, June 1, 2008, plaintiff placed a SCR complaining of the "same problem [the previous day]...no bowl [*sic*] movement in past 36 hours and the green stuff I threw up was partially bowl [*sic*]...I've had this before on the street." (*Id.*) Nurse Grayson advised plaintiff to increase his fluid intake and eat meals regularly; she further advised plaintiff to return on June 4, 2008, if his symptoms persisted. (*Id.*)

On June 3, 2008, plaintiff placed a SCR complaining that he hadn't "gotten any better" and requesting Nurse Grayson to "give [him] something so [he] can make a bowl [*sic*] movement the pain hurts [*sic*]." (*Id.*) Nurse Grayson again instructed plaintiff to increase his fluid intake; plaintiff voiced his understanding. (*Id.*) On June 5, 2008, plaintiff placed another SCR, writing that he was "still having complications concerning my stomach problem. I need assistance immediately." (*Id.*) Nurse Grayson gave plaintiff a "fleets enema;" plaintiff thereafter reported a "good bowel movement" in less than thirty minutes. (*Id.*)

On June 10, 2008, plaintiff filed a second "Declaration of Emergency Treatment," stating that he hadn't made a bowel movement, was still vomiting, nauseous, and had stomach pains. (*Id.*) Plaintiff was sent to the emergency room at Louisiana State University HSC E.A. Conway Hospital in Shreveport, where it was determined that plaintiff's appendix had ruptured. (Def.'s Statement of Uncontested Material Fact [doc. # 30], ¶¶ 15-16; Pl.'s Statement of Undisputed Facts [doc. # 36], ¶ 18.) Four days later, on June 14, 2008, plaintiff was transferred to LSU Medical Center in Shreveport, a hospital "better equipped for the procedure." (Def.'s Statement of Uncontested Material Fact at ¶ 17; *see also* Pl.'s Statement of Undisputed Facts at ¶ 19.) Plaintiff remained in Intensive Care for approximately ten weeks. (Pl.'s Statement of Undisputed

Facts at ¶ 19.)

Plaintiff's complaint was filed on June 15, 2009. [Doc. # 1.] Plaintiff amended his complaint on October 5, 2009, dismissing MDC and Dr. John Doe as defendants. [Doc. 8, p. 1.]

## Summary Judgment Principles

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(b). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2511 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*.

In evaluating the evidence tendered by the parties, the court must accept the evidence of

the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[1] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

## Analysis

**I.    Plaintiff's § 1983 Claims**

Plaintiff brings his claims under 42 U.S.C. Section 1983. Plaintiff has sued individually: Morehouse Parish Sheriff Mike Tubbs; Warden Robert Tapp; Assistant Warden Issaic Brown; Nurse S. Grayson; Lt. Brad Fife; and Sgt. Clacks. Plaintiff alleges that Warden Tapp, Assistant Warden Brown, Nurse Grayson, Lt. Fife, and Sergeant Clacks "could have prevented his appendix from rupturing." (Compl. [doc. # 1], at ¶ 7.) Plaintiff further alleges that Sheriff Tubbs

---

[1] I.e., beyond doubt.

(listed as "Sheriff John Doe" in the complaint) is liable "for the acts and omissions of all his employees...for failing to train, supervise and instruct his employees what to do in case of life threatening emergency situations." (*Id.* at ¶ 26.)

To succeed on his claims of inadequate medical care brought under Section 1983, an inmate must demonstrate that there has been a violation of Eighth Amendment rights through "deliberate indifference to serious medical needs" by prison officials or other state actors. *Estelle v. Gamble*, 429 U.S. 97, 105-107 (1976). Such a showing of "deliberate indifference" is difficult to meet, as plaintiff must prove (1) the official in question was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates that the official subjectively intended that harm occur. *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2001)..

In the case *sub judice*, plaintiff has failed to introduce any evidence to establish that the named defendants were aware of a serious risk of harm to the plaintiff, or that they subjectively intended that any harm occur. As stated above, until plaintiff's complaints became "acute" on June 10, 2008, plaintiff himself stated that he knew what was wrong with them and how to handle his discomfort. *See* Def.'s Mot. Summ. J. Exs. [doc. # 30]. Plaintiff also attributed his health issues to diabetes. *Id.* In his opposition papers, plaintiff does not provide an affidavit or other sworn testimony concerning the alleged "deliberate indifference" of the named defendants, or that defendants were aware of a substantial risk of potentially serious harm to plaintiff should they fail to address his health concerns properly.

Indeed, throughout his complaint and in his opposition papers, plaintiff offers a strikingly

6

different statement of events than the defendants. However, plaintiff has failed to support his version of events with competent summary judgment evidence, *e.g.*, in affidavit form, or a declaration sworn under penalty of perjury, 28 U.S.C. § 1746.

Plaintiff's claims are numerous. He states "it has been established that plaintiff made at least five sick calls to the medical ward of MDC with complaints of bloody throw-up, bloody stools and excruciating pain in his lower abdomen." *See* Opp. Mot. Dismiss [doc. # 36]. In his complaint, plaintiff alleges that he went to Nurse Grayson on or around May 15, 2008, and showed her "green vomit in zip lock bag" and "the blood stains in the rear of his fruit of the loom underwear." (Compl. [doc. # 1], at ¶ 10.) Plaintiff further alleges that on or around May 19, 2008, Lieutenant Brad Fife discovered a "zip lock bag with bloody, green/yellowish vomit hanging on the side of plaintiffs bunk [*sic*]." (*Id.* at ¶ 12.) Plaintiff alleges that Nurse Grayson told plaintiff that she couldn't do anything for him, and to return to his dorm. (*Id.*)

Additionally, plaintiff claims he has "established that it was not until Plaintiff was on or near his death bed that he was finally transported to an outside hospital, and it was not until that time that he was even seen by a doctor of any sort." *See* Opp. Mot. Dismiss [doc. # 36]. However, plaintiff fails to include sworn testimony or evidence in support of these claims. There are no affidavits, logs, or records of any kind evidencing that Nurse Grayson, Lieutenant Brad Fife, or Sergeant Clacks ignored any of plaintiff's complaints, and the medical records submitted by the defendants belie the plaintiff's claims. There are no logs by Nurse Grayson or anyone else noting the "zip lock bags of throw-up" plaintiff allegedly showed the MDC medical staff. Nurse Grayson did not note ever seeing plaintiff's bloody underwear. Rather, the evidence provided by

movant shows that plaintiff himself believed his ailments to be "diabetic related" and that he had experience with such ailments before "on the street." Def.'s Mot. Summ. J. Exs. [doc. # 30])

Although factual controversies are to be resolved "in favor of the nonmoving party," an actual controversy does not exist unless "both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Indeed, in response to a properly supported motion for summary judgment, **the non-movant may not rest upon the mere allegations or denials contained in his pleadings**, but instead must set forth, by affidavit or otherwise, the specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). In other words, once the moving party points to an absence of evidence in the nonmoving party's case, the non-movant must come forward with summary judgment evidence sufficient, such that if introduced at trial, it would suffice to prevent a directed verdict against the non-movant. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

Here, plaintiff has submitted no such evidence. In his opposition, plaintiff declares that he "can and has established that the defendant's [*sic*] knowingly and intentionally denied and delayed him adequate medical care and that said denial and delay caused him excruciating pain for in excess of ten weeks [*sic*], at least two surgeries (possibly three), removal of half of his colon, and other damages to be proven by outside medical records which have yet to be received..." (Opp. Mot. Dismiss [doc. # 36].) However, defendants' evidence fails to support even a claim of negligence against the defendants, much less deliberate indifference. Without offering any evidence in support of his allegations, there can be no genuine issue as to the material facts alleged. *Celotex Corp.*, 477 U.S. at 322-23. Plaintiff has therefore "failed to make a showing sufficient to establish the existence" of elements essential to his case, *i.e.*, that the

defendants "knowingly and intentionally" withheld adequate medical care; and that such care caused plaintiff's injuries. *Id.*

If, after the movant party's initial showing, the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). **It is therefore recommended that the Defendants' motion be GRANTED, and that plaintiff's civil rights claims against all defendants be dismissed with prejudice.**

## II. Qualified Immunity

Defendants also invoke the affirmative defense of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted). When a defendant invokes qualified immunity, the burden shifts to plaintiff to establish that the defense is inapplicable. *Id*. (citation omitted). Plaintiff's burden is two-pronged. *Id*. First, he must demonstrate that defendants violated a constitutional right under current law. *Id*. "Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id*. (quoted source and internal quotation marks omitted). The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (*citing Pearson v. Callahan*, 808 U.S. 2009, 129 S.Ct. 808 (2009)).

Having determined that the individual defendants did not violate plaintiff's constitutional rights, *see* discussion, *supra*, analysis of the qualified immunity defense is unnecessary. *Goodman v. Harris Cnty.*, 571 F,3d 388, 396 (5th Cir. 2009).

### III.    Supervisor Liability

As stated *supra*, plaintiff brings claims against Morehouse Parish Sheriff Mike Tubbs under 42 U.S.C. Section 1983, alleging that Sheriff Tubbs is liable "for the acts and omissions of all his employees...for failing to train, supervise and instruct his employees what to do in case of life threatening emergency situations." (Compl. [doc. # 1], at ¶ 26.) "[A]n underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997). To the extent that plaintiff seeks to impose liability upon Sheriff Tubbs in his supervisory capacity under § 1983, he must establish (1) the sheriff's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (citation omitted). Here, however, plaintiff has not adduced any evidence that there was a constitutional violation in the first place, much less that Sheriff Tubbs was personally involved in any alleged constitutional violation. *See* discussion, *supra*.

In the absence of the supervisors' personal participation in the events at issue, plaintiff must demonstrate that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Mesa*, *supra*. Deliberate indifference entails a "conscious choice to endanger constitutional rights." *Id.* (citation and internal quotation marks omitted). Deliberate indifference normally

requires more than a single instance of lack of training or supervision. *Id.* Again, in the absence of a constitutional violation, plaintiff has not made and cannot make the requisite showing here.

## Conclusion

For the above-assigned reasons,

**IT IS RECOMMENDED** that the motion for summary judgment [doc. # 30] filed by defendants Morehouse Parish Sheriff Mike Tubbs, Warden Robert Tapp, Assistant Warden Issaic Brown, Nurse S. Grayson, Lt. Brad Fife, and Sgt. Clacks be **GRANTED**, and that plaintiff's claims against said defendants be dismissed with prejudice.

**IT IS FURTHER RECOMMENDED** that plaintiff's claims against the remaining defendant, "unnamed insurance company," be dismissed with prejudice. The unnamed insurance company, which has neither been identified nor served, cannot be liable unless the allegedly insured defendants are liable. Therefore dismissal of any claims against it is also appropriate.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE**

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 8th day of September 2010.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE