# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| CALVIN RODRIGUE<br>LA. DOC #248547 | CIVIL ACTION NO. 09-0985<br>Section P |
| VERSUS | JUDGE ROBERT G. JAMES |
| MOREHOUSE DETENTION<br>CENTER, ET AL. | MAG. JUDGE KAREN L. HAYES |

# RULING

This is a civil rights action brought by Plaintiff Calvin Rodrigue ("Rodrigue") pursuant to 42 U.S.C. § 1983. Rodrigue complains about the medical care he received while housed at the Morehouse Detention Center ("MDC"). Pending before the Court is a Motion for Summary Judgment [Doc. No. 30] filed by Defendants Sheriff Mike Tubbs, Warden Robert Tapp, Assistant Warden Isaaic Brown, Nurse S. Grayson, Lt. Brad Fife, and Sgt. Clacks.

On September 8, 2010, Magistrate Judge Karen L. Hayes issued a Report and Recommendation [Doc. No. 37] recommending that the Court grant Defendants' Motion for Summary Judgment because Rodrigue failed to produce summary judgment evidence sufficient to show that Defendants knowingly and intentionally withheld adequate medical care and that their actions caused his injuries. Although the Report and Recommendation recognized that Rodrigue offered a "strikingly different statement of events than . . . [D]efendants," he did not support his version of events with an affidavit or declaration. The Magistrate Judge further recommended that the Court, *sua sponte*, dismiss Rodrigue's claims against an "unnamed insurance company" listed as an additional Defendant.

At the time the Report and Recommendation issued, Plaintiff Calvin Rodrigue had been acting *pro se*.  However, on September 22, 2010, Rodrigue filed a motion for extension of time to file objections to the Report and Recommendation, indicating that he had obtained representation.  The Court granted an extension of time to October 11, 2010.  Rodrigue then filed objections and supported his claims with an affidavit.

On October 19, 2010, Defendants filed a reply memorandum.

Having fully reviewed the record in this matter, including Rodrigue's affidavit,[1] the Court ADOPTS IN PART and DECLINES TO ADOPT IN PART the Report and Recommendation of the Magistrate Judge.  To the extent that the Magistrate Judge recommends dismissal of the unnamed insurance company, the Court ADOPTS the Report and Recommendation and will order dismissal of this Defendant.  The Court further adopts the statement of facts and law set forth by the Magistrate Judge.  To the extent that the Magistrate Judge otherwise recommends granting Defendants' Motion for Summary Judgment, the Court DECLINES TO ADOPT the Report and Recommendation.

Viewing the evidence in the light most favorable to Rodrigue and based on the affidavit now submitted to the Court, the Court finds that the facts, for purposes of summary judgment, are as follows:

• On May 31, Rodrigue submitted a sick call request ("SCR") with a "Declaration of Emergency Treatment" based on "stomach ache, chill bumps, hot/cold diabetic related." Nurse Grayson's notes indicate that he also told her that he vomited.  Rodrigue further avers

---

[1]Pursuant to Federal Rule of Civil Procedure 72(b)(3), the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Thus, in the interest of justice, the Court has considered Rodrigue's affidavit, although it was not submitted prior to the issuance of the Magistrate Judge's Report and Recommendation.

that he gave her a bag of green vomit and showed her blood stains on his underwear from his rectal bleeding.  Nurse Grayson gave him phernergan.

• On June 1, Rodrigue submitted an SCR to Sgt. Clacks, complaining of the "same problem," plus no bowel movement in 36 hours and "the green stuff I threw up was partially bowl[sic] . . . I've had this before on the street."  Rodrigue contends that he notified Defendants that his vomit was now tinged with blood.  Nurse Grayson gave Rodrigue Meclazine for nausea and medication for constipation.  She instructed him to increase his fluids and eat regularly, and she told him to return on June 4 if his symptoms continued.  Although Rodrigue requested that he be taken to the hospital, his request was denied.

• On June 3, Rodrigue avers that Lt. Fife saw a ziplock bag with green vomit tinged with blood hanging from his bed.  On his own and without request, Lt. Fife transported Rodrigue to Nurse Grayson.  She gave him Milk of Magnesia and told him to return to his cell because she could do nothing else for him.  The same day, Rodrigue submitted another SCR complaining that he hadn't "gotten any better" and asked Nurse Grayson to "give [him] something so [he could] make a [bowel] movement the pain hurts [sic]."  Nurse Grayson told him to increase his fluids and "voiced [her] understanding."

• On June 5, Rodrigue submitted an inmate request form to Lt. Fife requesting medical treatment, recounting the history of an emergency sick call on May 31, and stating that he previously received a suppository, had vomited for at least two days, had then received a pill to "help keep my food down," and had not defecated.  The same day he submitted another SCR about his "stomach problem" and stated that he was "still having complications concerning my stomach problem.  I need assistance immediately."  In response, Nurse Grayson gave him an enema, and he had a bowel movement in thirty minutes.  She instructed him to "replace fluids" and to "eat vegetables."  Although Rodrigue requested hospitalization, his request was denied.

• Also on June 5, Sgt. Clacks allegedly received a telephone call from Rodrigue's mother about his health.  Sgt. Clacks told Rodrigue that if his mother did not stop calling Rodrigue would be disciplined.

• On June 10, Rodrigue made a second "Declaration of Emergency Treatment" because he had not had a bowel movement, was nauseous, vomiting, and had stomach pains.  An unknown sergeant instructed Sgt. Clacks to contact Nurse Grayson and inform her of Rodrigue's condition.  Nurse Grayson made arrangements to have Rodrigue transferred to E.A. Conway Hospital in Monroe, Louisiana.  Rodrigue could only sign a few documents before he collapsed on the floor.

• Rodrigue was taken to the emergency room at E.A. Conway.  It was determined that his appendix had ruptured.  Until he was taken to E.A. Conway, Rodrigue was treated only by Nurse Grayson.

• On June 14, Rodrigue was transferred to LSU in Shreveport, where he underwent emergency surgery and remained in ICU for two weeks. While hospitalized, Rodrigue also underwent surgery on his lungs to repair damage caused by the release of toxins from his ruptured appendix and surgery to remove half of his colon and several bone fragments from his pelvis.

The Supreme Court addressed the rights of prisoners in *Estelle v. Gamble*, 429 U.S. 97 (1976). In *Estelle*, the Supreme Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 104. That is, "[a] prison official violates the Eighth Amendment when his/her conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain." *Id.* (citation and internal quotation marks omitted). "A delay of medical care can constitute an Eighth Amendment violation" if "there has been deliberate indifference [that] results in substantial harm." *Id.* (citation and internal quotation marks omitted).

A prison official can be found liable under the Eighth Amendment only if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." [*Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006)]. If, however, the risk is obvious, the prison official's knowledge of a substantial risk of harm may be inferred. *Id.* (citation omitted). A disagreement with the treatment provided is not sufficient to state a claim for deliberate indifference. *Id.* at 464 (citation omitted). A prison inmate may also demonstrate deliberate indifference by showing that "a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (citation omitted).

*Bennett v. Louisiana ex rel. Dept. of Public Safety & Corrections*, No. 07-31189, 2009 WL 102080, at *4 (5th Cir. Jan. 15, 2009). Based on the facts set forth above and applying this standard, at this stage of review, the Court finds that Rodrigue has raised a genuine issue of material fact for trial whether Defendants were deliberately indifferent to his medical needs, resulting in substantial harm

to him.

Defendants have also raised the defense of qualified immunity.  A public employee is protected from liability if a plaintiff fails to show the deprivation of a federal right and that the defendant's misconduct violated a "clearly established statutory or constitutional right of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It is clearly established under Supreme Court precedent both that Rodrigue had a federal right to medical care and that Defendants could not be deliberately indifferent to that care.  The Court has found that Rodrigue has raised a genuine issue of material fact for trial on the facts regarding his medical care and, thus, at this time, Defendants are not entitled to summary judgment on their claim of qualified immunity.

Rodrigue has also presented a § 1983 claim against the Sheriff based on a policy or custom which caused the constitutional violation of his right to medical care.  *See Richardson v. Oldham Cnty., Texas*, 12 F.3d 1373, 1381 (5th Cir. 1994).  While "[d]eliberate indifference is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action,'" the Court finds that summary judgment is not appropriate at this time based on Rodrigue's claim that the Sheriff had a policy of denying prisoners access to medical care from a physician.  *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)).  Thus, Defendants' Motion for Summary Judgment is DENIED.

Based on a review of Rodrigue's averments, the Court finds that discovery should be re-opened to permit Plaintiff's counsel time to depose Defendants, as well as to allow the parties to engage in other appropriate discovery.  If at the conclusion of the re-opened discovery, Defendants

believe that they are still entitled to judgment as a matter of law, they may file a second motion for summary judgment.  The Court will refer this case to the Magistrate Judge to conduct a conference and to issue a new scheduling order.

      MONROE, LOUISIANA, this 20th day of December, 2010.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE